UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

    Plaintiff,

v.                                      Case No. 12-11235

CITY OF JACKSON, et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. # 51] AND MOTION TO EXTEND [Dkt. # 70]; GRANTING DEFENDANT'S MOTION TO DISMISS [Dkt. # 49]; AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. # 69]**

Proceeding *pro se*, Plaintiff Peter Bormuth sues the City of Jackson, Michigan, Jackson Community College ("JCC"), a dean and an instructor at JCC, two Jackson police officers, and a Jackson city attorney for alleged wrongs arising from Bormuth's failed attempt to perform at a JCC poetry reading. Bormuth submits three motions for partial summary judgment (Dkts. # 51, 59, 78) and a motion to extend the time to appeal (Dkt. # 70). The city attorney moves to dismiss (Dkt. # 49), and Jackson, the police officers, and the city attorney move for summary judgment (Dkt. # 69). This order denies one of Bormuth's motions for partial summary judgment, denies Bormuth's motion to extend, grants the city attorney's motion to dismiss, and grants in part the pertinent Defendants' motion for summary judgment. These motions are fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2).

## I.  BACKGROUND

JCC instructor John Yohe occasionally hosted a public poetry event, which included both a reading by a featured poet and an "open microphone" time for anyone else who wanted to perform.  In late 2010, Bormuth read a poem during "open mic" that led Yohe to ask whether Bormuth would like to be the featured poet at a future reading.  Bormuth proclaims himself a pagan, and his poetry often criticizes Christianity.  Yohe assured Bormuth, however, that Yohe was "not bothered by any anti-Christian subject matter." (Dkt. # 78, Ex. 2, email 1.) "In fact," Yohe wrote, "I'm very open to it!" (*Id.*)  In response Bormuth described his background, including his repeated trouble with people who retaliated against him for "t[elling] the truth about their evil religion" and for failing to observe "their 'respect all religious path' politically correct bullshit." (*Id.* email 2.)  Yohe wrote back, "Thanks for the background.  I'm no fan of Christianity either, and I liked your [poetry] presentation , . . as did others.  So let's try it once [Bormuth's being a featured poet] and see what happens." (*Id.* email 3.)

About two months later, in February, 2011, Bormuth emailed Yohe and asked to enlist as an "open mic" performer for the next reading.  "[It] seems like you are drawing more people who want to read," he noted. (*Id.* email 6.)  Yohe answered, "Sorry, I can't give you special treatment.  You have to show up early like every one else!" (*Id.* email 7.)  To this Bormuth replied that he had twice seen names already on the "open mic" sign-up sheet when the sheet appeared at a reading. (*Id.* email 8.)  Yohe explained that a JCC student can sign up before the event.  He added, "If you don't like the way I run things, don't come." (*Id.* email 9.)  In response Bormuth said that he would stop attending the readings if Yohe thought his absence best served Yohe's students.

Bormuth proposed, however, that Yohe's students might learn from Bormuth, a rare "druidic bard" who "speak[s] for the beings this society denies a voice." (*Id.* email 10.) Yohe replied, "The reason people don't like you is not because you're anti-christian, but because you're an arrogant asshole. You are not welcome at my readings. Do not write to me again." (*Id.* email 11.)

In a September 27, 2011, email to a JCC administrator, Bormuth said that he planned to attend Yohe's poetry reading the next day and that he would sue JCC for religious discrimination if Yohe excluded him while allowing a specific "christian woman" to perform. (*Id.* email 12.) An email discussion ensued among the administrator, Yohe, and a JCC dean, Todd Butler. Yohe reported that Bormuth never appeared on September 28; but, he wrote, "My fear is that [Bormuth] likes attention . . . . My big fear is that he will try to make a scene at the next reading." (*Id.* email 14.) Writing to Bormuth on October 5, Butler said that Yohe could not accommodate all performers because of time constraints, not religion. (*Id.* email 18.) Bormuth responded, "Your excuse is lame and [I] do not buy it." (*Id.* email 19.)

On October 25, 2011, Bormuth went to the restaurant holding that night's poetry reading. He found Yohe and asked to sign up as an "open mic" performer. (Pl.'s Aff. 3, Dkt. # 60.) Yohe said Bormuth could not participate; but Bormuth persisted, until Yohe said "I'm sorry you are doing this" and went to speak with the restaurant's manager. (*Id.* at 4.) A restaurant employee then asked Bormuth to leave, but Bormuth refused; he "noted that he was one of the best poets in Jackson County and that the [JCC] students might enjoy hearing him[.]" (*Id.*) A few minutes later two police officers arrived. They too told Bormuth to go. Bormuth insisted he had a First Amendment right to stay, and

he stayed, so the officers arrested and removed him. (*Id.* at 5.) The City of Jackson charged Bormuth with trespassing. Assistant city attorney Gilbert Carlson tried the case, and Bormuth won an acquittal. (Pl.'s Aff. 8; Dkt. # 61, Ex. C.)

On March 20, 2012, Bormuth began this action against Jackson, JCC, and Yohe. A June 19, 2012, amended complaint adds the two officers (named only as "J. Lillie" and "M. Brandt") as well as Butler and Carlson.

## II.  DISCUSSION

The amended complaint never enumerates specific counts against specific defendants. Although it contains two substantive sections, "Argument on Constitutional Grounds of Protected Public Speech" and "Argument on Statutory Grounds," no coherent organizing principle dictates the division. Each section digresses into several disparate topics. For example, the section on "statutory grounds" discusses the Warren Court's First Amendment jurisprudence; the views of Adams, Madison, and Jefferson; the United States' 1796 treaty with Tripoli; and the proper practice of paganism and animism. Within the broader commentary reside only a few scattered and perfunctory references to the Civil Rights Act of 1964 and the Elliot Larsen Civil Rights Act, without the elements of a claim listed and without allegations against a specific defendant. Bormuth will need to clarify what he asserts against whom.

In any event, the amended complaint's introduction and conclusion mention the First and Fourth Amendments, 42 U.S.C. § 1983, the Civil Rights Act of 1964, malicious prosecution, false arrest, and slander. It seems best to address first the pending motions that contest either a procedural issue or one of Bormuth's discernable federal law claims.

4

### A. Assistant City Attorney Carlson's Motion to Dismiss

When considering a motion to dismiss, a court must accept as true the facts alleged in the complaint. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2079 (2011). But if the facts alleged fail to state a claim, the moving defendant is entitled to dismissal. *Total Ben. Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Carlson contends that the amended complaint states no claim against him because he enjoys absolute immunity. A prosecutor is absolutely immune from liability under 42 U.S.C. § 1983 for an act "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 340-41 (2009); *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011).

"Intimately associated with the judicial phase of the criminal process" describes perfectly the wrongful act Bormuth alleges against Carlson. Bormuth asserts only that during the criminal case Carlson submitted a brief containing information Carlson knew was false. (Am. Compl. 9, 24-25.) The analysis can end right there—although it bears noting that the accusation against Carlson is baseless. Bormuth merely disagrees with some of the *opinions* Carlson expressed in the brief; for instance, an opinion that Bormuth's emails to Yohe "became increasingly rude and belligerent."

The motion to dismiss raises authority involving only Section 1983. Accordingly, any claim against Carlson under Section 1983 fails.

5

**B. Jackson, Carlson, and the Police Officers' Motion for Summary Judgment**

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The police officers argue that qualified immunity defeats Bormuth's claims against them as a matter of law. "A law enforcement officer is entitled to qualified immunity if a reasonable officer could have believed his actions to be lawful, in light of clearly established law and the information the officer possessed." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (quotation omitted); *see Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). Bormuth's statements at the time of his arrest and, more informatively, the content of his response brief (Dkt. # 79) reveal that he challenges the officers' conduct under the First Amendment. A claim under the First Amendment cannot arise from an arrest supported by probable cause. *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006); *see also Leonard v. Robinson*, 477 F.3d 347, 367 (6th Cir. 2007) (Sutton, J., concurring in part and dissenting in part). Also, a plaintiff must show that protected free speech was the but-for cause of his arrest. *Leonard*, 477 F.3d at 355.

The First Amendment claim against the officers displays three distinct defects. First, Jackson says that its trespass ordinance provides, "No person shall . . . remain upon the land or premises of another after being notified to depart therefrom by the owner or occupant or the agent or servant of either." (Dkt. # 69, Ex. B.) The two

6

officers were called to a restaurant, by the restaurant, because the restaurant wanted someone removed. At the restaurant the officers found a person "remain[ing] upon the . . . premises of another after being notified to depart[.]" Probable cause supported an arrest. Second, although Bormuth strings together judicial quotes stressing the importance of free speech, he fails to address (except with bare assertions) the specific situation the officers faced. In other words, Bormuth fails to establish that a reasonable officer in Lillie and Brandt's shoes could not rely on the trespass ordinance to remove Bormuth from the restaurant. Bormuth cites nothing that shows the arrest violated "clearly established law." *See Reichle v. Howards*, 132 S.Ct. 2088 (2012). And third, no record evidence suggests the officers arrested Bormuth because of protected conduct. The officers arrested Bormuth because he was in a restaurant against the restaurant's will. On this record, at least, Bormuth's reason for being in the restaurant was irrelevant.

Bormuth asserts liability against Jackson under Section 1983 and *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), based on a failure to train Lillie and Brandt. To create a *Monell* claim, a failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." *Miller v. Sanilac Cnty*, 606 F.3d 240, 255 (6th Cir. 2010) (quotation and emphasis omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

No party addresses with insight (1) whether JCC's hosting the poetry reading meant that the private restaurant became a traditional or limited public forum or (2) if the restaurant was a public forum, what Bormuth needs to prove to establish a Section 1983 claim against Jackson, JCC, or Yohe. The available evidence—especially

the early emails between Bormuth and Yohe—suggests strongly that Yohe's banning Bormuth had nothing to do with Bormuth's poetry or religion or anti-religion. At any rate, assuming Bormuth enjoyed a First Amendment right to remain at the restaurant, and assuming the arrest was unlawful, Bormuth still fails to establish a *Monell* claim against Jackson. A city must use finite time and resources to train police officers for the situations that are either the most dangerous or the most likely to arise. *See Harris*, 489 U.S. at 390 n.10. It follows that a single misstep by the police almost never establishes that a failure to train equaled "deliberate indifference." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To support his *Monell* allegation Bormuth cites only his own arrest, which occurred because a community college instructor barred Bormuth from speaking at an event in a private building. Bormuth provides no analysis and no evidence showing that Jackson obviously needed to train officers to respond to the entirely odd circumstances of Bormuth's arrest.

The Section 1983 claims against the police officers and the *Monell* claim against Jackson each fail.

### C. Bormuth's First Motion for Partial Summary Judgment

Bormuth argues that Defendants may not re-litigate issues contested during Bormuth's criminal trial for trespass, which resulted in Bormuth's acquittal. "But an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984); *see, e.g.*, *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235 (1972); *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938); *Murphy v. United States*, 272 U.S. 630, 632-33 (1926); *Stone*

*v. United States*, 167 U.S. 178, 188 (1897). Thus the "failure of one party to carry the burden of [proof] on an issue should not establish the issue in favor of an adversary"—such as Bormuth—"who otherwise would have the burden of persuasion on that issue in later litigation." 18 Wright & Miller, *Federal Practice & Procedure Juris.* § 4422 (2d ed.).

Because the burdens of proof in criminal and civil cases differ, Bormuth's criminal acquittal governs no issue in this action.

### D. Bormuth's Motion to Extend the Time to Appeal

Bormuth moves to "extend the time" to appeal an August 10, 2012, order denying one of Bormuth's motions to recuse. The request for an extension is misplaced, however, because Bormuth cannot yet appeal as a matter of right and because no valid reason appears to permit an interlocutory appeal. *See* 28 U.S.C. §§ 1291–92; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978); *cf., e.g.*, *United States v. Parker*, 428 Fed.Appx. 260 (4th Cir. 2011) (summarily dismissing for want of jurisdiction an interlocutory appeal challenging the denial of a motion to recuse or disqualify); *Burlseon v. Sprint PCS Group*, 76 Fed.Appx. 280 (10th Cir. 2003) (same).

### III. CONCLUSION

IT IS ORDERED that Carlson's motion to dismiss [Dkt. # 49] is GRANTED in that any Section 1983 claim against Carlson is DISMISSED WITH PREJUDICE. The pertinent Defendants' motion for summary judgment [Dkt. # 69] is GRANTED IN PART in that the Section 1983 claims against Lillie and Brandt and the *Monell* claim against the City of Jackson are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Bormuth's first motion for partial summary judgment [Dkt. # 51] and motion to extend the time to appeal [Dkt. # 70] are DENIED.

IT IS FURTHER ORDERED that by **November 29, 2012**, Bormuth shall submit a paper of no more than three pages specifying each claim he asserts against each Defendant.

IT IS FURTHER ORDERED that by **November 29, 2012**, JCC and Yohe shall submit a paper of no more than twenty pages answering (1) whether JCC's hosting the poetry reading meant that the private restaurant became a traditional or limited public forum, (2) if the restaurant was a public forum, what Bormuth needs to prove to establish a Section 1983 claim against JCC or Yohe, and (3) why Bormuth can or cannot prove a claim against JCC or Yohe.  Bormuth may respond in twenty pages or fewer by **December 17, 2012**.

  s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  November 13, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 13, 2012, by electronic and/or ordinary mail.

                                              s/Lisa Wagner
                                              Case Manager and Deputy Clerk
                                              (313) 234-5522